## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ARAMARA BEAUTY LLC d/b/a GLOW
RECIPE,

      Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

      Defendants.

_____

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Aramara Beauty LLC doing business as Glow Recipe ("Plaintiff" or "Aramara Beauty"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" (collectively "Defendants"). Defendants are promoting, selling, offering for sale, and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "E-commerce Store Names"). In support of its claims, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law

claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district, because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Plaintiff, Aramara Beauty, is a limited liability company organized and existing under the laws of New York and having a principal place of business at 43 West 24th Street, Suite 702, New York, New York 10010. Plaintiff conducts business throughout the United States. Plaintiff is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality goods under multiple widely-recognized common law and federally registered trademarks, including those identified in Paragraph 19 below. Plaintiff offers for sale and sells its trademarked goods within the State of Florida, including this district, and throughout the United States. Defendants, through the sale and offer to sell counterfeit and infringing Plaintiff branded products, are directly and unfairly competing with Plaintiff's

economic interests in the United States, including the State of Florida and causing Plaintiff irreparable harm and damage within this jurisdiction.

5.     Like many other trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with the Plaintiff name and associated trademarks and the destruction of the legitimate market sector in which it operates.

6.     To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees and investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires Plaintiff to expend significant resources across a wide spectrum of efforts to protect both consumers and it from confusion and the erosion of the goodwill embodied in Plaintiff's brand.

## THE DEFENDANTS

7.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued

pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the E-commerce Store Names.

8.      Defendants operate under the E-commerce Store Names in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

9.      Upon information and belief, Defendants use aliases in conjunction with the operation of their businesses.

10.     Defendants are the past and/or present controlling forces behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademarks as described herein.

11.     Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of one or more of Plaintiff's trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiff. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Plaintiff-branded goods into the State.

12.     Defendants have registered, established, or purchased, and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading

information during the registration or maintenance related to their respective Ecommerce Store Name.

13.     Defendants will likely continue to register or acquire new e-commerce store names, or other aliases, as well as related payment accounts, for the purpose of selling and offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

14.     Defendants' E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiff's trademarks, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. Moreover, Defendants are using Plaintiff's name and/or trademarks to drive Internet consumer traffic to at least one of their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

15.     Plaintiff is a renowned cosmetic and skincare brand trusted for its clinically effective, fruit-forward, and clean products. The company was founded as a small start-up business in 2014 by co-founders Mee (Christine) Chang ("Christine Chang") and Sarah Sha ("Sarah Lee"), with a vision towards sharing beauty innovations and trends from Korea to customers around the world.

16.     Christine Chang and Sarah Lee joined forces in utilizing their bicultural and bilingual beauty backgrounds to pursue this dream of expanding access to Korean skincare products. With this vision in mind, Plaintiff has curated unique product offerings inspired by skincare traditions and rituals in Korea.

17.     Indeed, one of Plaintiff's top-rated products – the Watermelon Glow Sleeping Mask® – was inspired by the childhood memory of playing outside in the hot summer months in South Korea, and Christine Chang and Sarah Lee's grandmothers rubbing watermelon rinds on their heat rashes to hydrate and heal their skin. The founders tested over a thousand formulations to perfect this innovative Watermelon Glow Sleeping Mask® before introducing it to consumers. Once it hit the market, the product sold out *numerous* times with *thousands* of people lined up on a waitlist. See Composite Exhibit 1 attached hereto for true and correct copies of articles from various websites highlighting the popularity of Plaintiff's Watermelon Glow Sleeping Mask®, and that it required a waitlist and would frequently sell out.

18.     What the founders never envisioned is that their two-woman operation would quickly emerge as a multi-million-dollar business that is now a leading prestige skincare brand in the United States; as evidenced by its numerous industry awards and accolades, including without limitation Women's Wear Daily ("WWD") 2023 Category Builder of the Year Award, Adweek's Creator Visionary Award, and Allure's Best of Beauty Award.

19.     Plaintiff is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Aramara Beauty Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Glow Recipe | 4,755,299 | June 16, 2015 | 003 – Body and beauty care cosmetics; Make-up; Non-medicated skin care preparations |
| Watermelon Glow Sleeping Mask | 5,322,410 | October 31, 2017 | 003 – Cosmetics |
| watermelon glow | 5,322,403 | October 31, 2017 | 003 – Cosmetics |
| WATERMELON GLOW NIACINAMIDE DEW DROPS | 6,290,899 | March 9, 2021 | 003 – Cosmetics; Non-medicated skin care preparations; all of the aforesaid containing niacinamide in significant part |
| GLOW RECIPE | 6,934,127 | December 27, 2022 | 035 – Retail store services featuring virtual goods, namely, bags, clothing, headwear, footwear, cosmetics, non-medicated skin care preparations, personal care products, swimwear, art, and accessories for all of the foregoing for use in online virtual worlds; Retail store services featuring cosmetics and non-medicated skin care preparations; On-line retail store services featuring cosmetics and non-medicated skin care preparations |
| WATERMELON GLOW | 7,062,112 | May 23, 2023 | 003 – Cosmetics; non-medicated skin care preparations; all of the foregoing made in whole or significant part of watermelon |

The Aramara Beauty Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Aramara Beauty Marks are attached hereto as Composite Exhibit "2."

20.     Since its founding, Plaintiff has expended a substantial amount of time, energy, and resources promoting and marketing the Aramara Beauty Marks so that consumers would instantly recognize the Marks as originating from Plaintiff.

21.     Plaintiff has consistently been featured in major news media outlets on numerous occasions, such as Vogue Business, Fortune, Allure, Glossy Pop, and WWD, highlighting the company's unique history and innovative products.

22.     Plaintiff has also expanded its retail outlets from its website (www.glowrecipe.com) to various major retail locations, such as Sephora, Mecca, and Cult Beauty.

23.     Since 2014, Plaintiff has spent about sixty-seven million dollars ($67,300,000 USD) in marketing and advertising efforts to promote its brand and products.

24.     Plaintiff's brand recognition has also skyrocketed as major celebrities have started using and promoting the brand. For example, Drew Barrymore has featured the Watermelon Glow Sleeping Mask® in her own skincare routine and promoted it as one of her top ten (10) gifts. See Exhibit 3, Ruby McAuliffe, Drew Barrymore Named This Night Serum One of Her Top Gift Picks, INSTYLE (Nov. 30, 2022), https://www.yahoo.com/lifestyle/drew-barrymore-named-night-serum-023000544.html (last visited Oct. 21, 2024).

25.     To date, Plaintiff has generated about five-hundred and seven million dollars ($507,000,000 USD) in gross revenue from the sale of products under Plaintiff's brand.

26.     It is an understatement to say that Plaintiff has worked tirelessly to build its business, reputation, and brand from the ground up.

27.     The Aramara Beauty Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period.

28.     The Aramara Beauty Marks have been used in commerce by Plaintiff long prior in time to Defendants' use of copies of those Marks. The Aramara Beauty Marks have never been assigned or licensed to any of the Defendants in this matter.

29.     The Aramara Beauty Marks are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned. Plaintiff has carefully monitored and policed the use of the Aramara Beauty Marks.

30.     The Aramara Beauty Marks are well-known and have been for many years. Plaintiff expends substantial resources developing, advertising, and otherwise promoting the Aramara Beauty Marks and products bearing the Aramara Beauty Marks.

31.     Further, Plaintiff extensively uses, advertises, and promotes the Aramara Beauty Marks in the United States in association with the sale of high-quality goods.

32.     As a result of Plaintiff's efforts, consumers readily identify merchandise bearing or sold using the Aramara Beauty Marks, as being high-quality goods sponsored and approved by Plaintiff.

33.     Accordingly, the Aramara Beauty Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

34.     Genuine goods bearing the Aramara Beauty Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Plaintiff brand and the goods sold thereunder, and the problems associated with the counterfeiting of Plaintiff's trademarks.

**Defendants' Infringing Activities**

35.     Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the Aramara Beauty Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the E-commerce Store Names. Specifically, Defendants are each using the Aramara Beauty Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under the E-commerce Store Names. Defendants are each using identical copies of one or more of the Aramara Beauty Marks for different quality goods with unknown ingredients. Plaintiff used the Aramara Beauty Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

36.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Aramara Beauty Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale in or through Defendants' e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiff.

37.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the Aramara Beauty Marks without Plaintiff's permission.

38.     Defendants are concurrently employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Aramara Beauty Marks. Specifically, Defendants are using counterfeits and infringements of Plaintiff's name and the Aramara Beauty Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiff and non-Plaintiff goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Aramara Beauty Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

39.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

40.     At all times relevant hereto, Defendants have had full knowledge of Plaintiff's ownership of the Aramara Beauty Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of the Aramara Beauty Marks, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

42.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43.     Defendants above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Although Defendants are being named individually, Plaintiff has good cause to believe the E-commerce Store Names are all operated and/or controlled by the same individual and/or organization.

45.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Plaintiff and the overall consumer market in which they operate because of Defendants' concurrent actions.

46.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Plaintiff.

47.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

48.     Further, Defendants, upon information and belief, are likely to transfer or secrete their assets to avoid payment of any monetary judgment awarded to Plaintiff.

49.     Plaintiff has no adequate remedy at law.

50.     Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Aramara Beauty Marks. If Defendants' intentional counterfeiting and infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

51.     The harm and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

52.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 51 above.

53.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Aramara Beauty Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

54.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the Aramara Beauty Marks. Defendants are continuously infringing and inducing others to infringe the Aramara Beauty Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing Plaintiff branded goods.

55.     Defendants' indivisible and concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

56.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

57.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Aramara Beauty Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     Plaintiff has suffered and will continue to suffer irreparable injury and damages while Defendants are earning a substantial profit due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

59.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 51 above.

60.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Aramara Beauty Marks have been widely advertised and offered for sale throughout the United States via the Internet.

61.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one or more of the Aramara Beauty Marks are virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

62.    Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

63.    Defendants have each authorized infringing uses of one or more of the Aramara Beauty Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and sell are genuine, non-infringing goods.

64.    Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Aramara Beauty Marks to unfairly compete with Plaintiff and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Plaintiff of valuable marketing and educational space online which would otherwise be available to Plaintiff and (ii) reducing the visibility of Plaintiff's genuine goods on the World Wide Web and across social media platforms.

65.    Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

66.     Plaintiff has no adequate remedy at law and has sustained both individual and indivisible injury and damages caused by Defendants' concurrent conduct. Absent entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendants are earning a substantial profit.

## COUNT III - COMMON LAW UNFAIR COMPETITION

67.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 51 above.

68.     This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale, of goods bearing and/or using marks that are virtually identical to one or more of the Aramara Beauty Marks in violation of Florida's common law of unfair competition.

69.     Specifically, Defendants are each promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of the Aramara Beauty Marks. Defendants are also each using counterfeits and infringements of one or more of the Aramara Beauty Marks to unfairly compete with Plaintiff and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

70.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein by their use of the Aramara Beauty Marks.

71.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages because of Defendants' concurrent actions, while Defendants are unjustly profiting from those actions.

### COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

72.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 51 above.

73.     Plaintiff is the owner of all common law rights in and to the Aramara Beauty Marks.

74.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of the Aramara Beauty Marks.

75.     Specifically, each Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Aramara Beauty Marks.

76.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using the Aramara Beauty Marks.

77.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury because of Defendants' concurrent actions, while Defendants are unjustly profiting from those actions.

### PRAYER FOR RELIEF

78.     WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, jointly and severally, against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Aramara Beauty Marks; from using the Aramara Beauty Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Aramara Beauty Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks; and from otherwise unfairly competing with Plaintiff.

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent

authority, enjoining Defendants and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services, or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Aramara Beauty Marks.

        c.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of the Aramara Beauty Marks.

        d.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace operators and/or administrators for the E-commerce Store Names and any other alias e-commerce store names being used by Defendants who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective E-commerce Store Names.

        e.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Aramara Beauty Marks.

f.     Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiff's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Aramara Beauty Marks at issue to Plaintiff's control so they may no longer be used for unlawful purposes.

g.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiff to serve the injunction on any Internet marketplace operators and/or administrators for the E-commerce Store Names to disclose to Plaintiff the true identities and contact information for the registrants of the E-commerce Store Names.

h.     Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their E-commerce Store Name(s) and any other e-commerce store names used by Defendants, to Plaintiff and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name(s) and any other e-commerce store names used by Defendants, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Aramara Beauty Marks via the e-commerce store names operating under the E-commerce Store Names, and upon Plaintiff's request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Aramara Beauty Marks associated with or linked to the same sellers or linked to any other alias e-commerce store names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Aramara Beauty Marks.

k. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators of the E-commerce Store Names who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the Aramara Beauty Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

l. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, Defendants and the authorized representative, officer, managing operator and/or administrator for any Internet marketplace platform, e-commerce shipping partner, fulfillment center, warehouse, and/or storage facility who are provided with notice of the injunction immediately cease fulfillment of and sequester all goods of each Defendant bearing one or more of the Aramara Beauty Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiff, together with any and all documents,

information, paper and/or electronic data, and/or other tangible items pertaining to all services provided to or on behalf of each Defendant.

m.      Entry of an order requiring, upon Plaintiff's request, Defendants to request in writing permanent termination of any messaging services, e-commerce store names, usernames, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, and social media website.

n.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. § 1117, or that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

o.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

p.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or any other alias e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds

into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

       q.     Entry of an order requiring Defendants, at Plaintiff's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

       r.     Entry of an award of pre-judgment interest on the judgment amount.

       s.     Entry of an order for any further relief as the Court may deem just and proper.

DATED: June 18, 2025.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
Annie O'Leary (Fla. Bar No. 1050009)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: Annie@smgpa.cloud
Attorneys for Plaintiff, Aramara Beauty LLC

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**