**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-22763-BLOOM/Elfenbein**

ARAMARA BEAUTY LLC d/b/a GLOW
RECIPE,

         Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

         Defendants.

_____/

**SEALED ORDER GRANTING PLAINTIFF'S *EX PARTE* APPLICATION**
**FOR ENTRY OF TEMPORARY RESTRAINING ORDER**

**THIS CAUSE** is before the Court upon Plaintiff's *Ex Parte* Application for Entry of

Temporary Restraining Order and Order Restraining Transfer of Assets (the "Application for

Temporary Restraining Order" or "Application"), ECF No. [8]. The Court has carefully considered

the Application for Temporary Restraining Order, the record in this case, the applicable law, and

is otherwise fully advised. For the following reasons, Plaintiff's Application is granted.

By the instant Application, Plaintiff, Aramara Beauty LLC doing business as Glow Recipe

("Plaintiff"), moves *ex parte* pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65,

The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority, for entry of a

temporary restraining order and an order restraining the financial accounts used by Defendants[1]

for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Because Plaintiff has

_____

[1] Defendants are the Individuals, Business Entities, and Unincorporated Associations identified on Schedule
"A."

satisfied the requirements for the issuance of a temporary restraining order, the Court grants Plaintiff's Application for Temporary Restraining Order.

## I.     <u>BACKGROUND</u>[2]

Plaintiff is the owner of the following trademarks (the "Aramara Beauty Marks"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office (USPTO):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Glow Recipe | 4,755,299 | June 16, 2015 | 003 – Body and beauty care cosmetics; Make-up; Non-medicated skin care preparations |
| Watermelon Glow Sleeping Mask | 5,322,410 | October 31, 2017 | 003 – Cosmetics |
| watermelon glow | 5,322,403 | October 31, 2017 | 003 – Cosmetics |
| WATERMELON GLOW NIACINAMIDE DEW DROPS | 6,290,899 | March 9, 2021 | 003 – Cosmetics; Non-medicated skin care preparations; all of the aforesaid containing niacinamide in significant part |
| GLOW RECIPE | 6,934,127 | December 27, 2022 | 035 – Retail store services featuring virtual goods, namely, bags, clothing, headwear, footwear, cosmetics, non-medicated skin care preparations, personal care products, swimwear, art, and accessories for all of the foregoing for use in online virtual worlds; Retail store services featuring cosmetics and non-medicated skin care preparations; On-line retail store services featuring cosmetics and non-medicated skin care preparations |
| WATERMELON GLOW | 7,062,112 | May 23, 2023 | 003 – Cosmetics; non-medicated skin care preparations; all of the foregoing made in whole or significant part of watermelon |

---

[2] The factual background is taken from Plaintiff's Complaint, ECF No. [1], Plaintiff's Application for Temporary Restraining Order, ECF No. [8], and supporting evidentiary submissions. Plaintiff filed declarations and exhibits annexed thereto in support of its Application for Temporary Restraining Order. The declarations are available in the docket at the following entries: Chang Decl., ECF No. [8-1], Gaffigan Decl., ECF No. [8-3], and Burns Decl., ECF No. [8-5].

*See* Decl. of Mee (Christine) Chang (Chang Decl.), ECF No. [8-1] ¶ 4; ECF No. [1-3] (containing Certificates of Registrations for the Aramara Beauty Marks at issue). The Aramara Beauty Marks are used in connection with the manufacture, promotion, distribution, and sale of high-quality goods in the categories identified above. *See* Chang Decl., ECF No. [8-1] ¶¶ 4-5.

Defendants, by operating the Internet based e-commerce stores under the seller names (the "E-commerce Store Names") identified on Schedule "A" have advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Aramara Beauty Marks. *See id*. ¶¶ 9-15; Decl. of Stephen Gaffigan (Gaffigan Decl.), ECF No. [8-3] ¶¶ 2-3; Decl. of Kathleen Burns (Burns Decl.), ECF No. [8-5] ¶ 4.

Although each Defendant may not copy and infringe each Aramara Beauty Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing that each Defendant has infringed, at least, one or more of the Aramara Beauty Marks. *See* Chang Decl., ECF No. [8-1] ¶¶ 9-15; ECF No. [8-2]. Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Aramara Beauty Marks. *See* Chang Decl., ECF No. [8-1] ¶¶ 9, 13, 15.

The E-commerce Store Names were accessed via Walmart.com and observed to be advertising, offering for sale, and/or promoting products bearing and/or using various counterfeits and confusingly similar imitations of one or more of Plaintiff's trademarks at issue in this action. Gaffigan Decl., ECF No. [8-3] ¶ 2; ECF No. [8-4]; Burns Decl., ECF No. [8-5] ¶ 4; ECF No. [8-6].  In connection therewith, Plaintiff's investigator at Invisible Inc ("Invisible"), a licensed private investigative firm, accessed certain E-commerce Store Names and documented the placement of an order from those Defendants for a product bearing and/or using counterfeits and infringements

of one or more of the Aramara Beauty's Marks. Burns Decl., ECF No. [8-5] ¶ 4; ECF No. [8-6].

Each order was able to be processed entirely online, and Invisible documented the information for

finalizing payment for Defendants' products as identified on Schedule "A" to the Burns Decl.

Burns Decl., ECF No. [8-5] ¶ 4; ECF No. [8-6]. At the conclusion of the process, the detailed web

page captures of the various Aramara Beauty branded products offered for sale via Defendants' E-

commerce Store Names captured and downloaded under the direct supervision of Stephen M.

Gaffigan, P.A. and those captured by Invisible were sent to Plaintiff's representative for review.

Chang Decl., ECF No. [8-1] ¶¶ 10-12; Gaffigan Decl., ECF No. [8-3] ¶ 3; Burns Decl., ECF No.

[8-5] ¶ 4.

Plaintiff's representative reviewed and visually inspected the Internet based E-commerce

Store Names and/or the detailed web page captures reflecting the Aramara Beauty branded products

captured and downloaded under the direct supervision of Stephen M. Gaffigan and by Invisible

and determined the products were non-genuine, unauthorized versions of Plaintiff's goods. Chang

Decl., ECF No. [8-1] ¶¶ 13-15; ECF No. [8-2].

## II.   LEGAL STANDARD

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a

substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the

relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on

the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex.*

*rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Additionally, a court may only

issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and
> irreparable injury, loss, or damage will result to the movant before the adverse party can be
> heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to
> give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

## III.   DISCUSSION

The declarations Plaintiff submitted in support of its Application for Temporary Restraining Order support the following conclusions of law:

1.      Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Aramara Beauty Marks, and that the products Defendants are selling and promoting for sale are copies of the Plaintiff's products that bear and/or use copies of the Aramara Beauty Marks.

2.      Because of the infringement of the Aramara Beauty Marks, Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It appears from the following specific facts, as set forth in Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

a.      Defendants own or control Internet based e-commerce stores operating under their E-commerce Store Names that advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks in violation of the Plaintiff's rights;

b.      There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are

likely to be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

       c.     There is good cause to believe that if Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, Defendants can easily and quickly change the ownership or modify e-commerce store and private messaging account data and content, change payment accounts, redirect consumer traffic to other e-commerce store names and private messaging accounts, and transfer assets and ownership of the E-commerce Store Names, thereby thwarting Plaintiff's ability to obtain meaningful relief.

3.     The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

4.     The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

5.     Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of the Aramara Beauty Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

6.      Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

7.      Considering the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's inherent authority, Plaintiff's Application for Temporary Restraining Order, **ECF No. [8],** is **GRANTED** as follows:

1.      Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby temporarily restrained as follows:

a.      From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

b.      From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale,

7

offer for sale, distribution, or transfer of any products bearing and/or using the Aramara Beauty Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Aramara Beauty Marks or any confusingly similar trademarks, on or in connection with all e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the E-commerce Store Names;

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue the use of the Aramara Beauty Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the E-commerce Store Names;

4.      Each Defendant shall preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Order;

5.      Upon receipt of notice of this Order, the Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Walmart Inc., which operates the Walmart.com website ("Walmart"), and its related companies and affiliates shall immediately (i) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the E-commerce Store Names, store numbers, and/or infringing product numbers, identified on Schedule "A" hereto, as well as any other related accounts of the same customer(s); (ii) identify all other accounts that transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) divert those restrained funds to a holding account for the trust of the Court;

6.      Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Walmart, and its related companies and affiliates, shall further, within five business days of receiving notice of this Order, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account

transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained. Such restraining of the funds and the disclosure of the related financial institution account information shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Walmart, and their related companies and affiliates, for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court;

7.      This Order shall apply to the E-commerce Store Names, associated e-commerce stores, and financial accounts, and any other e-commerce store names, or financial accounts which are being used by Defendants for the purpose of counterfeiting the Aramara Beauty Marks and/or unfairly competing with Plaintiff;

8.      Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order;

9.      As a matter of law, this Order shall no longer apply to any Defendant or associated e-commerce store dismissed from this action or as to which Plaintiff has withdrawn its request for a temporary restraining order;

10.      Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the

Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

11.     After Plaintiff's counsel has received confirmation from the financial institution regarding the funds restrained as directed herein, Plaintiff shall serve a copy of the Complaint, Application for Temporary Restraining Order, and this Order on each Defendant by e-mail and/or online contact form or other means of electronic contact provided on the e-commerce stores operating under the respective E-commerce Store Names, or by providing a copy of this Order by e- mail to the marketplace platform for each of the E-commerce Store Names so it, in turn, notifies each Defendant of the Order, or by other means reasonably calculated to give notice which is permitted by the Court.  In addition, Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at http://servingnotice.com/Ara3Yp/index.html and shall provide the address to the website to Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants     by     regularly     updating     the     website     located     at http://servingnotice.com/Ara3Yp/index.html, or by other means reasonably calculated to give notice which is permitted by the Court;

12.     Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the Internet platforms, e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, and marketplace

platforms, including but not limited to, Walmart, and its related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail address known to be associated with Defendants' respective E-commerce Store Names;

13.     This Order shall remain in effect for **fourteen (14)** days from the date of its entry unless extended for good cause. *See* Federal Rule of Civil Procedure 65(b).

14.     The Clerk shall file this Order under seal until further order of the Court

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 1, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

Case No. 25-cv-22763-BLOOM/Elfenbein

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER, E-COMMERCE STORE NAME, AND RESPECTIVE**
**FINANCIAL ACCOUNT INFORMATION**

| Defendant Number | Defendant/E-commerce Store Name | Store ID | Infringing Product Number |
|---|---|---|---|
| 1 | Afunyo | 101566671 | 6127164219 |
| 2 | Anko Makeup Cosmobeauty | 101661457 | 14189003941 |
| 3 | Bj Hoho | 101566386 | 5349700007 |
| 4 | CCdssr | 102489364 | 9727673916 |
| 5 | ChangshashipingteWanju | 101657867 | 15122760523 |
| 6 | chnxienz | 102482083 | 15074358013 |
| 7 | Ckulufk | 101638496 | 15238409741 |
| 8 | Fashionable Co.Ltd | 101635924 | 15160761633 |
| 9 | full-car.custom | 101571788 | 5434307801 |
| 10 | Fusheng Technology | 102479870 | 10758322503 |
| 11 | Godbay Co.Ltd | 101530495 | 5432313938 |
| 12 | HANJING Co.Ltd | 101682984 | 13740419798 |
| 13 | Henan Haoyucheng Electronic | 101597364 | 14664657062 |
| 14 | HGEAIJLA | 102491251 | 14459519625 |
| | | | 15204917990 |
| 15 | htqttij | 101690963 | 13539502814 |
| 16 | jiaomengmaoyi | 101658741 | 5399714049 |
| 17 | Jileiy Clothing | 101685640 | 15113408912 |
| 18 | JinJun | 101611962 | 5464872184 |
| | | | 5313929300 |
| 19 | JUANJUANXILIU | 101581837 | 5321348057 |
| 20 | lhydz | 101232892 | 5912172491 |
| 21 | MMQ Inc | 101113676 | 5292151035 |
| 22 | Momoko- | 101582698 | 5460404854 |
| 23 | Ninx | 101574976 | 5391072869 |
| 24 | NLTLLWWU | 102493930 | 15095371390 |
| 25 | Pottseth | 102517849 | 14401722974 |
| 26 | Qeandy | 102582223 | 14295808706 |
| 27 | ruiaoxin | 102595916 | 8980510048 |
| 28 | SUJITO Co.Ltd | 101667086 | 15092823763 |
| 29 | SURU Co.Ltd | 102484311 | 5225525853 |
| 30 | Tardaianiella | 101653606 | 5392300238 |
| 31 | UrbanWoven | 102661103 | 15087872387 |
| 32 | Weyolog | 101633495 | 14769001844 |
| | | | 14460261380 |

13

Case No. 25-cv-22763-BLOOM/Elfenbein

| 33 | Xhlmnhd | 102502160 | 15057950697 |
|----|---------|-----------|-------------|
| 34 | Yuncang | 101629560 | 5359284088 |
| 35 | ZAIWEN Co.Ltd | 102543620 | 5074484940 |
| 36 | zhenzhenrishang | 101619179 | 5494111223 |